IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | Case No. |
| THE ARREST OF | ) | |
| CECILIA RODRIGUEZ | ) | UNDER SEAL |

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Cynthia Paige Pinson, being duly sworn and deposed, state the following:

1. I have been a Special Agent with the Federal Bureau of Investigation (FBI) for over three years. I have investigated numerous intellectual property crimes. I am currently assigned to the Washington Field Office Computer Crimes Squad. Our squad's primary mission is to investigate both intellectual property crimes and crimes utilizing the exploitation of emerging technologies to defraud United States industries and consumers. I have received training in general law enforcement and in specialized areas including computer, intellectual property and other white-collar crimes. In addition, I hold a Bachelor's degree in industrial engineering from the Georgia Institute of Technology (Georgia Tech) and a Master's degree in business administration from Georgia State University. I have worked with the computer security center within Georgia Tech, and I have taught numerous courses involving internet software.

2. The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals including other law enforcement personnel, representatives from the Motion Picture Association of America (MPAA), representatives from the Recording Industry Association of America (RIAA), representatives from Blazer Investigations who have received extensive training in the recognition of counterfeit goods from the manufacturers of trademarked goods including the National Football

League, review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

3.      I make this affidavit to establish probable cause in support of an application by the United States of America for the issuance of a criminal complaint and arrest warrant charging CECILIA RODRIGUEZ with conspiracy to traffic in counterfeit goods, in violation of Title 18, United States Code, Sections 371 (Conspiracy) and 2320 (Trafficking in Counterfeit Goods).

4.      Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for the issuance of a criminal complaint and arrest warrant, this affidavit does not set forth each and every fact I learned during the course of this investigation.

## I. RELEVANT CODE SECTIONS

Title 18, United States Code, Sections 371 and 2320 provide in pertinent part:

Section 371:
If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Section 2320:
(a)     Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000.

(b)     Upon a determination by a preponderance of the evidence that any articles in the possession of a defendant in a prosecution under this section bear counterfeit marks, the United States may obtain an order for the destruction of such articles.

... (e)   For the purposes of this section –
        (1)     the term "counterfeit mark" means –
                (A)     a spurious mark

>   (i) that is used in connection with trafficking in goods or services;
>   (ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and
>   (iii) the use of which is likely to cause confusion, to cause mistake, or to deceive. . . .
>   (2) the term "traffic" means transport, transfer, or otherwise dispose of, to another, as consideration for anything of value, or make or obtain control of with intent to so transport, transfer, or dispose of. . . .

## II. COMPLAINT TO THE WASHINGTON METROPOLITAN POLICE DEPARTMENT

5.  On April 13, 2005, officers from the Washington, D.C., Metropolitan Police Department (MPD) received a complaint from investigators for the RIAA and the MPAA regarding the unauthorized sale of music CDs and movie DVDs that contained deceptive labeling in violation of Title 22, D.C. Code, Section 3214.01 (2004 edition).

6.  The investigators from the RIAA and MPAA advised the MPD officers that an individual named "CHARLIE" was offering these unauthorized music CDs and movie DVDs for sale from a warehouse located at 1225 4th Street, NE, Washington, D.C.

7.  Prior surveillance conducted by the RIAA and MPAA investigators showed numerous individuals exiting the warehouse located at 1225 4th Street, NE, Washington, D.C., in possession of what appeared to be copyrighted music CDs and movie DVDs.

## III. MPD CONTROLLED PURCHASE

8.  Because of the MPAA and RIAA complaints, on April 19, 2005, officers from the MPD acting in an undercover capacity purchased motion picture DVDs from CHARLIE.

9.  During the purchase, a MPD undercover officer entered the warehouse located at 1225 4th

Street, NE, Washington, D.C. and asked the clerk for motion picture DVDs. The clerk then produced three (3) adult motion picture DVDs and advised the MPD undercover officer they were each priced at $3.00.

10. The MPD undercover officer then produced a $20.00 bill and presented it to the clerk, who advised the MPD officer to receive change from an individual named CHARLIE, an Asian male approximately 45 years of age. The individual referred to as CHARLIE then presented $11.00 to the MPD undercover officer.

11. The individual known as CHARLIE was later identified as QIYAO YUAN (hereinafter "YUAN") by MPD officers. YUAN resides at 7608 Kidmore Lane, Lanham, Maryland.

12. The MPD officer inquired as to the sale of non-pornographic motion picture DVDs and was advised by the clerk to return the following day after six o'clock p.m.

13. Before exiting the warehouse, the MPD officer observed YUAN sell five (5) motion picture DVDs, including one labeled "B-COOL," to another customer inside the warehouse. The MPD undercover officer recognized this motion picture DVD to be a title in current theatrical release, not yet available for sale to the public.

### IV. MPD SEARCH WARRANT

14. On April 20, 2005, officers from the MPD executed a search warrant issued by a judicial officer of the District of Columbia Superior Court, at 1225 4th Street, NE, Washington, D.C. 20002.

15. During the course of this search, MPD officers seized over 16,000 motion picture DVDs containing apparent counterfeit marks, 20 illegal audio CDs containing apparent counterfeit marks, hundreds of empty DVD cases, and motion picture labels for being placed inside these DVD cases.

16. Along with others, YUAN and PING CHEN were arrested by MPD officers pursuant to Title

4

22, D.C. Code, Section 3214.01 (2004 edition).

17.    Officers also seized business records during the execution of the search warrant that associate YUAN with the business, YY ENTERPRISES, INC.

18.    Business records seized during the execution of the search warrant show YY ENTERPRISES, INC. as an occupant for the premises located at 1225 4th Street, NE, Washington, D.C.

19.    In addition, near the entrance of 1225 4th Street, NE, Washington, D.C., the words, "CHARLIE'S Y.Y", are spray-painted in white letters on the side of the building.

### V. FBI INVESTIGATION AND UNDERCOVER PURCHASES

20.    The FBI was contacted by MPD regarding the results of the MPD search warrant executed at 1225 4th Street, NE, Washington, D.C. on April 20, 2005.

21.    A Confidential Informant (CI) of known reliability informed the FBI that YUAN continued to sell copyrighted works after his arrest.

22.    CI has provided information in previous investigations that has been established as having been true. CI has never provided any information that was found to be false or misleading.

23.    As the FBI investigated possible federal criminal violations, on May 23, 2005, the criminal complaint based on D.C. Code charges was dismissed in the District of Columbia Superior Court.

24.    Subsequently, undercover purchases were made from YUAN using an undercover MPD officer, FBI and MPD pre-recorded funds, and personnel from the FBI and MPD. Each item purchased was later inspected by an industry expert and found to contain counterfeit marks on the work and/or the packaging sold with the work, that is, spurious marks that are unauthorized copies of marks registered on the principal register in the United States Patent and Trademark Office and

are in use.

### A. June 22, 2005 Undercover Purchase

25. On June 22, 2005, an undercover purchase was made using $280.00 in pre-recorded FBI funds for the purchase of motion picture DVDs.

26. During this transaction, an undercover MPD officer entered the premises located at 1225 4th Street, NE, Washington, D.C., and met with a female, approximately aged in her twenties who referred to herself as CECILIA, regarding the purchase of motion picture DVDs. CECILIA was subsequently identified as CECILIA G. RODRIGUEZ (herinafter "CECILIA").

27. CECILIA provided a list to the undercover MPD officer that contained motion picture titles in current theatrical release, not yet available for sale to the general public.

28. After presenting CECILIA with $280.00, the undercover MPD officer was given DVD cases by CECILIA and told to meet CECILIA behind the Burger King restaurant located at 3rd Street and Florida Avenue, NE, where the undercover MPD officer would then receive the DVDs and artwork inserts for the titles purchased.

29. CECILIA called the undercover MPD officer and requested they meet at the liquor store across the street since a police vehicle was located in the Burger King restaurant parking lot. The MPD undercover officer agreed, and CECILIA arrived in the parking lot of the liquor store driving a Toyota vehicle, tan in color, bearing Maryland license plates. CECILIA retrieved a black bag containing movie DVDs from the front passenger seat of the vehicle and presented them to the undercover MPD officer.

30. The vehicle driven by CECILIA was later observed outside 1225 4th Street, NE, and bore the Maryland license plate number 5ATE05. Maryland registration information indicated that this

vehicle is registered to CECILIA G. RODRIGUEZ of 41 Stonegate Drive, Silver Spring, Maryland.

### B. October 14, 2005 Undercover Purchase

31. On October 14, 2005, an undercover purchase was made using $260.00 in pre-recorded FBI funds for 100 motion picture DVDs.

32. During this transaction, an undercover MPD officer and CI entered the premises located at 1225 4th Street, NE, Washington, D.C. and spoke with YUAN and an Asian female, who was aged approximately in her forties and known as CHEN, regarding the purchase of motion picture DVDs. CHEN was subsequently identified as PING CHEN (hereinafter "CHEN").

33. CHEN presented a list of movie titles to the undercover MPD officer and CI and stated that movie titles were sold in multiples of five. Later, CHEN and CECILIA, packaged the DVDs inside the premises.

34. The list provided to the undercover MPD officer and CI contained motion pictures in current theatrical release, not yet available for sale on DVD to the general public.

35. After choosing titles, the undercover MPD officer then asked YUAN for the total of the purchase and presented YUAN with $260.00.

36. After stating that DVD cases were needed, YUAN retrieved a box containing empty DVD cases and presented it to the undercover MPD officer.

37. During the transaction, the undercover MPD officer and CI purchased the following motion pictures and sound recordings titles:

| DESCRIPTION | QUANTITY |
| --- | --- |
| 1. Flight Plan | 20 DVDs |
| 2. The Gospel | 25 DVDs |
| 3. Green Street Hooligans | 5 DVDs |
| 4. A History of Violence | 5 DVDs |

| | |
|---|---|
| 5. The Exorcism of Emily Rose | 5 DVDs |
| 6. Two For the Money | 15 DVDs |
| 7. Venom | 5 DVDs |
| 8. G | 5 DVDs |
| 9. Beef | 5 DVDs |
| 10. Best of Mike Jones and Slim Thug Young Jeezy & Juelz Santana | 10 DVDs |

### C. October 21, 2005 Undercover Purchase

38.  On October 21, 2005, an undercover purchase was made using $320.00 in pre-recorded FBI and MPD funds for 100 motion picture DVDs and one pair of Timberland boots.

39.  Prior to the transaction, the undercover MPD officer approached 1225 4th Street, NE, Washington, D.C. and met YUAN, who was outside the premises.

40.  After engaging YUAN in conversation regarding the purchase of motion picture DVDs, YUAN and the undercover MPD officer entered 1225 4th Street, NE, Washington, D.C.

41.  Once inside the premises, YUAN inquired as to whether the undercover MPD officer's purchase quantity would be the same as that purchased on 10/14/2005, 100 DVDs, and the undercover MPD officer answered in the affirmative.

42.  YUAN then directed CHEN to provide the undercover MPD officer the same quantity ordered previously.

43.  CHEN provided a list to the undercover MPD officer that contained motion pictures in current theatrical release, not yet available for sale on DVD to the general public.

44.  After choosing the following movie titles and quantities, the undercover MPD officer received a box containing 100 empty DVD cases from YUAN.

| **DESCRIPTION** | **QUANTITY** |
|---|---|
| 1. The Exorcism of Emily Rose | 5 DVDs |

8

| | |
|---|---|
| 2. The Gospel | 5 DVDs |
| 3. Hustle & Flow | 5 DVDs |
| 4. G | 10 DVDs |
| 5. Into the Blue | 5 DVDs |
| 6. A History of Violence | 5 DVDs |
| 7. The Marksman | 5 DVDs |
| 8. Carlito's Way | 5 DVDs |
| 9. Hostile Takedown | 5 DVDs |
| 10. Unleashed | 10 DVDs |
| 11. Domino | 10 DVDs |
| 12. The Man | 10 DVDs |
| 13. The Fog | 11 DVDs |
| 14. Dirty Shield | 5 DVDs |
| 15. The Animal | 5 DVDs |
| 16. Booty Talk 49 | 1 DVD |

45. The undercover MPD officer presented YUAN with $260.00 in FBI and MPD pre-recorded funds and YUAN indicated that he also had Timberland boots and Airforce One shoes for sale.

46. The undercover MPD officer presented YUAN with $60.00 and was given a pair of Timberland boots by an unknown male.

47. YUAN indicated he was in a hurry and directed the undercover MPD officer to leave a telephone number with CHEN for future ordering purposes.

### D. October 28, 2005 Undercover Purchase

48. On October 28, 2005, an undercover purchase was made using $260.00 in pre-recorded FBI funds for 100 motion picture DVDs and $100.00 in MPD pre-recorded funds for the purchase of three Washington Redskin National Football League (NFL) jerseys.

49. During this transaction, an undercover MPD officer entered the premises located at 1225 4th Street, NE, Washington, D.C. and spoke with YUAN regarding the purchase of motion picture DVDs and inquired which new movie titles were available.

50. YUAN asked if the undercover MPD officer's order quantity would be the same then

directed CHEN to provide the DVDs to the undercover MPD officer. The following is a list of movie titles and quantities provided to the undercover MPD officer by CHEN:

| DESCRIPTION | QUANTITY |
|---|---|
| 1. Flightplan | 5 DVDs |
| 2. Doom | 5 DVDs |
| 3. Shooting Gallery | 10 DVDs |
| 4. Stay | 10 DVDs |
| 5. North Country | 10 DVDs |
| 6. Dave Chappelle Live at the Fillmore | 5 DVDs |
| 7. Four Brothers | 5 DVDs |
| 8. Holier Than Thou | 5 DVDs |
| 9. Two For the Money | 5 DVDs |
| 10. Critical Assignment | 5 DVDs |
| 11. Dirty Shield | 5 DVDs |
| 12. The Prophesy Forsaken | 5 DVDs |
| 13. Today You Die | 5 DVDs |
| 14. Domino | 5 DVDs |
| 15. The Fog | 5 DVDs |
| 16. Unleashed | 5 DVDs |
| 17. The Gospel | 5 DVDs |

51.   While CHEN accumulated the order, YUAN advised the undercover MPD officer that he had NFL jerseys available for sale. The undercover MPD officer inquired as to the price for three of the jerseys and YUAN advised that the cost would be $100.00.

52.   The undercover MPD officer provided $100.00 in pre-recorded MPD funds to YUAN and he then handed three of the Washington Redskins jerseys to the undercover MPD officer.

### VI. EXAMINATION OF UNDERCOVER PURCHASES

53.   All items purchased during each undercover purchase described above were later inspected by industry experts who have received extensive training in the recognition of counterfeit goods from the manufacturers of trademarked goods, and who have experience assisting Federal and State law enforcement agencies in the detection of counterfeit goods.

54. Each item described above as purchased by the undercover officer, including movies, sound recordings, and NFL jerseys, and later inspected by an industry expert, was found to contain counterfeit marks on the work and/or the packaging sold with the work, that is, spurious marks that are unauthorized copies of marks registered on the principal register in the United States Patent and Trademark Office and are in use.

## VII. CONCLUSION

55. The facts and circumstances summarized above in this affidavit provide evidence of probable cause to believe that CECILIA RODRIGUEZ conspired with QIYAO YUAN, PING CHEN, and others to traffic in countefeit goods, in violation of Title 18, United States Code, Sections 371 and 2320.

WHEREFORE, the undersigned respectfully requests that the Court approve the attached arrest warrant and criminal compaint.

_____
Cynthia Paige Pinson
Federal Bureau of Investigation
Special Agent

Sworn to before me this ____ day of _____ 2005.

NOV 09 2005

_____

11

United States Magistrate Judge
District of Columbia

ALAN KAY
U.S. MAGISTRATE JUDGE